UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THRIVENT FINANCIAL FOR LUTHERANS, a not-for-profit corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 12 C 638 ) ) Judge Joan B. Gottschall |
| EVA JOHNSON, an individual, and LAURA LONG, an individual, | ) ) ) |
| Defendants. | ) |
| LAURA LONG, an individual, | ) ) |
| Cross-Plaintiff, | ) ) |
| v. | ) ) |
| EVA JOHNSON, an individual, | ) ) |
| Cross-Defendant. | ) |

## MEMORANDUM OPINION & ORDER

Thrivent Financial For Lutherans, a not-for-profit corporation ("Thrivent"), filed a complaint for interpleader against Eva Johnson and Laura Long, both of whom made claims to the proceeds of an insurance policy on the life of Gary Johnson. Thrivent deposited the proceeds of the insurance policy with this court and has been dismissed as a party in this case. Long then filed a cross-claim against Eva Johnson, seeking to impose a constructive trust against $75,000 of the proceeds. Long has moved for summary judgment on her cross-claim. For the reasons stated below, the motion is granted.

# I. FACTS

The court takes the following facts from the parties' Local Rule 56.1 Statements of Facts ("SOFs"), to the extent that they are supported by admissible evidence and relevant to issues raised in the motion. Where facts are disputed, the court takes no position as to which version of the disputed matter is correct. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

At the time of his death on September 24, 2011, Gary Johnson was married to Eva Johnson. Eva has two daughters: Alexa and Barbara. Gary also had a daughter, Elizabeth, whose mother is a woman named Laura Long. On January 29, 1997, Gary entered into an agreement (the "Agreement") with Laura concerning their support of Elizabeth. Article VIII of the Agreement provided:

> LIFE INSURANCE. [Gary Johnson] further covenants and agrees that he will secure and maintain a life insurance policy for $75,000.00 in full force and effect, paying the premiums thereon as the same shall fall due and shall name [Laura Long] as beneficiary on behalf of the child. Said policy shall remain in effect until the child is emancipated.

(Cross-Pl.'s Mot. Summ. J. Ex. A (Agreed Judgment Order of Paternity and Agreement), ECF No. 41.) As part of the Agreement, Gary also promised to pay child support and contribute to Elizabeth's college expenses. The Agreement was incorporated into a Judgment Order of Paternity (the "Judgment") entered in the Circuit Court of DuPage County.

On November 22, 2010, Laura petitioned the Circuit Court to issue a rule to show cause why Gary should not be held in contempt for his failure to maintain life insurance as required by the Judgment. The court ordered Gary to provide proof of insurance to Laura by January 15, 2011. Gary then provided proof to Laura by tendering to her a Beneficiary Acknowledgment form issued by Thrivent, which stated:

> **Beneficiary Designation**
>
> $75,000.00, or the total death proceeds if less than $75,000.00, shall be paid to Laura Long, mother of my child, if surviving, otherwise to Eva Johnson, spouse, if surviving; otherwise to the estate of the owner.
>
> The balance of the proceeds, if any, shall be paid to Eva Johnson, spouse, if surviving; otherwise to the estate of the owner.

(*Id.* Ex. C (Beneficiary Acknowledgment).) After Gary tendered this proof that Laura was a beneficiary of the policy, the rule to show cause against him was discharged by the Circuit Court.

On September 19, 2011, Gary was admitted to Provena St. Joseph Hospital due to complications from pancreatic cancer. On September 21, 2011, John Drafall, a Thrivent insurance agent, received an e-mail from garyjohnson1215@gmail.com. The e-mail stated:

> Dear John,
>
> I need to make a change to my life insurance. I had added that Laura Long would receive money upon my death. I am cancelling that beneficiary. I will fax over a signed copy of this. The only beneficiary will remain my wife, Eva Ivona Johnson. . . . This cancellation is effective immediately.
>
> Please forward via email any form that I need to sign if any. Also, please advise me of a fax number if correspondence should be sent via fax. Thank you.
>
> Gary Johnson

(*Id.* Attach. 5 (Drafall Dep.) Ex. 3 (Sept. 21, 2011 E-mail), ECF No. 41-5.) Thrivent received a Beneficiary Designation form via fax on September 23, 2011, the day before Gary died. The form stated that Eva was to be the primary beneficiary, that Eva's two daughters, Barbara and Alexa, were to be the first contingent beneficiaries, and that Gary's estate was to be the second contingent beneficiary. Laura was not named as a beneficiary. The form was signed "Gary Johnson." (*Id.* Ex. E (Beneficiary Designation).)

The Beneficiary Designation form was faxed from the number (630) 444-1984, which was the Johnsons' home phone number. Gary, however, was in the hospital when the fax was sent, and no one other than Eva and the two children had access to the home phone. John Drafall, the Thrivent agent, e-mailed Gary on September 23, 2011, to ask him whether he had

faxed the Beneficiary Designation form to Thrivent. Drafall received a response e-mail from garyjohnson1215@gmail.com on September 24, 2011 at 5:22 p.m. The e-mail said, "yes it was faxed there." But Gary had died approximately sixteen hours earlier, at 1:45 a.m. On the Tuesday following Gary's death, Eva called John Drafall and asked him if the beneficiary change was effective.

The parties dispute whether Gary signed the Beneficiary Designation form. Laura submits that the evidence clearly shows that Gary did not sign the form and that his purported signature on the form is a forgery. Eva contends that the signature is genuine. When asked at her deposition "[I]s that Gary Johnson's signature?" she replied, "It looks like it." (*Id.* Attach. 1 (Eva Dep.) 60:12-13, ECF No. 41-1.) When asked, "Could it be that someone else signed his name . . . ?" she replied, "Anything is possible." (*Id.* at 62:2-4.)

On January 30, 2012, Thrivent filed a complaint for interpleader against Eva and Laura, both of whom have made claims to the proceeds of the insurance policy. Thrivent has deposited the net life insurance proceeds of $245,872.84 with the court pursuant to a prior order. (*See* April 18, 2012, Order, ECF No. 13.) Laura has filed a cross-claim against Eva. The cross-claim seeks to impose a constructive trust against $75,000 of the proceeds. Laura now seeks summary judgment on her cross-claim.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). "[A] factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v.*

4

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

### III. ANALYSIS

#### A. Subject Matter Jurisdiction

The court must determine whether it possesses subject matter jurisdiction. Eva argues that this court lacks subject matter jurisdiction because (i) the life insurance policy was to remain in effect only until Elizabeth was emancipated, which occurred on May 17, 2012; and (ii) this case involves issues of family law, which are typically handled by state courts. Both arguments are meritless.

Interpleader actions filed under Federal Rule of Civil Procedure 22 are "based upon the general jurisdiction statutes applicable to civil actions in the federal courts." *Metro. Life Ins. Co. v. Goeden*, No. 10 C 262, 2010 WL 2698275, at *2 (S.D. Ill. July 7, 2010). The relevant jurisdictional statute here is 28 U.S.C. § 1332, which requires "'complete diversity of citizenship between the plaintiff-stakeholder and the defendant-claimaints, and . . . an amount in controversy in excess of $75,000, exclusive of interest and costs.'" *Id.* (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 1710 (3d ed. 1998 & Supp. 2010)). Thrivent, the plaintiff-stakeholder, is a citizen of Wisconsin. Both defendant-claimants are citizens of Illinois. Accordingly, there is complete diversity between the plaintiff-stakeholder and the defendant-claimants. Complete diversity among the claimants is not required. *Id.* The amount-in-controversy requirement is met because the proceeds of the life insurance policy—$245,872.84—exceed the $75,000 threshold.[1]

---

[1] It is irrelevant that Laura's cross-claim does not itself exceed the $75,000 threshold. The value of the fund is dispositive. *See* Wright, Miller & Kane, *supra*, at § 1710 (collecting cases).

The court may exercise supplemental jurisdiction over Laura's cross-claim under 28 U.S.C. § 1367(a). The court has discretion to decline to exercise jurisdiction over this claim because Thrivent's original claim has been dismissed, so the only pending claim is a state-law claim between two Illinois residents. *See* 28 U.S.C. § 1367(c). It has been recognized, however, that declining jurisdiction in such circumstances "would be totally inconsistent with the policies underlying the federal interpleader remedy and should be avoided." *See* Wright, Miller & Kane, *supra*, at § 1710. The court agrees that declining to exercise jurisdiction here would frustrate the purpose of Rule 22, and so the court chooses to retain supplemental jurisdiction over Laura's cross-claim.

Because the requirements of § 1332 are satisfied, the court has subject matter jurisdiction. The fact that Elizabeth was emancipated after this lawsuit was filed may go to the merits of Laura's cross-claim, but it is irrelevant to the jurisdictional inquiry. Neither does it matter that Laura's cross-claim involves issues of family law, as the court has discretion to retain supplemental jurisdiction over state-law claims, and, for the reasons stated above, has chosen to retain supplemental jurisdiction here.

**B. Constructive Trust**

In deciding who is entitled to the proceeds of the life insurance policy, the court applies Illinois law. *Travelers Ins. Co. v. Daniels*, 667 F.2d 572, 573 (7th Cir. 1981). Under Illinois law, "when a person has obtained money to which he is not entitled, under such circumstances that in equity and good conscience he ought not retain it, a constructive trust can be imposed to avoid unjust enrichment." *Smithberg v. Ill. Mun. Ret. Fund*, 735 N.E.2d 560, 565 (Ill. 2000). Although some form of wrongdoing is generally required for the imposition of a constructive

trust, wrongdoing is not always a necessary element. *Id.* Constructive trusts are appropriate when one spouse has transferred property in fraud of the rights of another. *Id.* at 565-66.

It is well-settled under Illinois law that, when a marital settlement agreement requires an insured to maintain life insurance for the benefit of a particular beneficiary, that beneficiary has an enforceable equitable right to the proceeds of the insurance policy against any other named beneficiary except one with a superior equitable right. *Id.* at 566 (citing *In re Schwass*, 467 N.E.2d 957 (Ill. App. Ct. 1984), *Appelman v. Appelman*, 410 N.E.2d 199 (Ill. App. Ct. 1980), and *Brunnenmeyer v. Mass. Mut. Life Ins. Co.*, 384 N.E.2d 446 (Ill. App. Ct. 1978)).

For example, in *Koenings v. First National Bank and Trust Co.*, 495 N.E.2d 671 (Ill. App. Ct. 1986), Mary and David Koenings entered into a property settlement agreement that was incorporated into a divorce decree. *Id.* at 672. The agreement provided that David would maintain a life insurance policy and designate the Koenings' two children as beneficiaries of the policy until the youngest child reached the age of twenty-one or completed college, whichever occurred last. *Id.* After the divorce, David married another woman, had a child with her, and then removed his children from the first marriage as beneficiaries under the life insurance policy. *Id.* The court held that the original child beneficiaries possessed an equitable right to the life insurance proceeds which accrued at the time of their father's death. *Id.*

When a beneficiary possesses an equitable right to life insurance proceeds because of a marital settlement agreement, Illinois courts have found that imposing a constructive trust on the insurance proceeds is an appropriate remedy to enforce the beneficiary's equitable right. *See, e.g.*, *IDS Life Ins. Co. v. Sellards*, 527 N.E.2d 426, 428 (Ill. App. Ct. 1988) (imposing constructive trust where marital settlement agreement required decedent to designate children as beneficiaries but decedent removed them in favor of third wife); *Schwass*, 467 N.E.2d at 960

7

(imposing constructive trust where marital settlement agreement required decedent to designate child as beneficiary but did not do so); *Appelman*, 410 N.E.2d at 204 (finding constructive trust appropriate where marital settlement agreement required husband to maintain life insurance policy for divorced wife but did not do so).

Federal courts applying state law have found a constructive trust to be an appropriate remedy in such circumstances as well. For example, in *American General Life Insurance Co. v. Skinner*, No. 10 C 0279, 2011 WL 550083 (E.D. Wis. Feb. 4, 2011), a family court had ordered a husband and his wife to maintain their life insurance policies and make no changes in beneficiaries or coverage. *Id.* at *1. While the order was still in effect, the husband removed his child as a beneficiary and named his mother as a beneficiary instead. *Id.* at *2. The court noted that, under Wisconsin law, when a spouse changes the beneficiary of a life insurance policy during the pendency of a divorce proceeding in violation of an order and then dies, a constructive trust is an appropriate remedy where equitable considerations warrant such relief. *Id.* at *4. Noting that the child had nothing to do with her father's death, the court found that "[b]ased on the undisputed material facts, this case cr[ies] out for the imposition of a constructive trust . . . ." *Id.* at *8.

Here, it is undisputed that the Agreement required Gary to secure and maintain a life insurance policy in the amount of $75,000 for the benefit of Laura. Under Illinois law, then, Laura had an equitable right to the proceeds of the policy. Any attempt to remove Laura as a beneficiary—whether that attempt was made by Gary, Eva, or someone else—was clearly wrongful. *See Skinner*, 2011 WL 550083, at *7 (finding that husband's attempt to change beneficiary was "clearly wrongful").

Eva argues that Gary had the "right" to remove Laura as a beneficiary on the Thrivent policy, as the Agreement required only that Gary maintain "an" insurance policy, not that he maintain the Thrivent policy specifically. She argues that summary judgment should be denied because Laura has not established that no other policy exists. But this argument misunderstands the parties' respective burdens on a motion for summary judgment. If Eva asserts that there is a genuine dispute over whether Gary maintained a life insurance policy for the benefit of Laura, she must support that assertion by "citing to particular parts of materials in the record . . . ;" or "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). Eva has not done this; rather, she has only speculated that another policy might exist. This is not enough to create a genuine issue of material fact. Accordingly, under Illinois law, a constructive trust should be imposed to enforce Laura's equitable right, unless the court determines that another named beneficiary holds an equitable right to the proceeds that is superior to Laura's. *Smithberg*, 735 N.E.2d at 565.

Here, Eva is arguably another named beneficiary of the policy, though Laura disputes whether the attempt to change the beneficiary to Eva was effective. Regardless, assuming that the attempted change was effective, Eva does not have an equitable right that is superior to Laura's. Eva argues that equitable principles weigh in her favor because Elizabeth is now an emancipated adult, and so, if Laura recovers, she will receive a $75,000 windfall that was supposed to be used to support Elizabeth. Illinois courts have held, however, that this fact is insufficient for Eva to establish a superior equitable right. *See IDS Life Ins. Co.*, 527 N.E.2d at 430 (holding that insured's third wife did not have superior equitable right because original child beneficiaries were emancipated adults and noting that "Illinois law is clear that [this is] insufficient to state a right to the proceeds of an insurance policy superior to the rights of those

9

specifically required to be named as beneficiaries in a divorce decree"). Accordingly, the court finds that Laura has an equitable right that is superior to Eva's.[2]

Eva also argues that Elizabeth's emancipation means that Laura lacks standing to sue, but this argument is also flawed. The Agreement required Gary to maintain life insurance with Laura as a beneficiary until Elizabeth was emancipated. Elizabeth was not emancipated when Gary died, so Laura gained an equitable right to the insurance proceeds upon Gary's death. *See Koenings*, 495 N.E.2d at 673 ("[P]laintiffs' . . . right to those proceeds accrued, at the latest, at the time of David A.'s death when they became entitled to the benefits of the life insurance policies."). Laura had to support Elizabeth without the benefit of the life insurance proceeds to which she was entitled. She has suffered an injury which can be redressed through the imposition of a constructive trust, and thus has standing to sue.

Because the Agreement required Gary to secure and maintain a $75,000 life insurance policy for Laura's benefit, she has an equitable right to that amount of the life insurance proceeds. That right is superior to Eva's, notwithstanding the fact that Elizabeth is now an emancipated adult. Accordingly, Laura is entitled to summary judgment on her cross-claim seeking the imposition of a constructive trust.[3]

---

[2] It is appropriate to determine which party holds a superior equitable right on a motion for summary judgment. *See Schwass*, 467 N.E.2d at 958; *Brunnenmeyer*, 384 N.E.2d at 447; *see also Skinner*, 2011 WL 550083, at *8 (granting summary judgment because attempted change of beneficiary was ineffective, but noting that summary judgment would be appropriate in any event because the equities favored the original beneficiary).

[3] Because the court finds that Laura is entitled to a constructive trust regardless of whether the change of beneficiary was effective, the court does not reach Laura's alternative argument that the evidence clearly suggests Gary's signature was forged, rendering the change of beneficiary ineffective.

## IV. Conclusion

For the reasons explained above, Laura Long's motion for summary judgment is granted. The clerk is directed to disburse $75,000.00 from the escrowed funds that were placed in the clerk's possession pursuant to the court's prior order. (*See* April 18, 2012, Order, ECF No. 13.) Laura is granted leave to file a petition for an award of reasonable attorneys' fees and costs. The petition must be filed no later than February 18, 2014, and should identify what authority, if any, supports awarding attorneys' fees in this case. The court will rule expeditiously on the request for fees.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: February 4, 2014